UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

BLANE BARRY,  )
            )
    Plaintiff,  )   2:15-cv-00004 JWS
            )
 vs.        )   ORDER AND OPINION
            )
SHELL OIL COMPANY, ARCTIA  )   [Re: Motion at docket 141]
OFFSHORE, LTD., SHELL  )
OFFSHORE, INC.; and SAFETY  )
MANAGEMENT SYSTEMS, LLC,  )
            )
    Defendants.  )
            )

## I. MOTION PRESENTED

At docket 141 Defendant Arctia ("Arctia") moves for summary judgment in its favor as to the claims brought against it by Plaintiff Blane Barry ("Plaintiff"). Plaintiff responds at docket 152. Arctia replies at docket 153. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This matter arises out of a claim for personal injuries sustained by Plaintiff in August of 2012 while he was working aboard the M/V NORDICA for EPS Cargo Handlers or EPS Logistics (collectively "EPS") as a lead rigger. The NORDICA was owned by Arctia, and Arctia supplied the vessel via a Master Time Charter with Defendant Shell Offshore, Inc. ("Shell") to aid Shell with marine oil field support and transportation services. Plaintiff alleges in his complaint that he seriously injured his back and neck while lifting a heavy cable at the request of another crew member on board the vessel. He seeks damages for lost earnings, lost earning capacity, past and future medical expenses, and "physical and emotional pain and suffering and loss of enjoyment of life."[1] Arctia contends that it cannot be held liable for the actions of crew members that did not work for Arctia and were not otherwise controlled by Arctia.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a

---

[1] Doc. 4 at ¶¶ 23, 24, 25.

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

reasonable jury could return a verdict for the nonmoving party."[4] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

---

[4]*Id.*

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

## IV. DISCUSSION

Plaintiff alleges that his spinal injuries on board the NORDICA occurred as a result of helping another crew member, Jens Boel Fischer, lift a crane cable spool on deck. Fischer was one of the crane technicians aboard the vessel. During his deposition, Plaintiff testified that he was approached by Fischer to help secure and clean up items on NORDICA's deck in advance of impending adverse weather. There were miscellaneous items to pick up or secure and a large spool of crane cable that needed to be moved below deck. He admitted at his deposition that only Fischer asked him to help and that he did not know whether anyone had asked Fischer to complete such a task.[11] He admitted that no officers, captains, or members of the navigational team were involved in the deck clean up or directed him to engage in such efforts.[12] Plaintiff agreed to help Fischer clean up, believing that Fischer was an employee of Arctia and that he had to comply with Fischer's directions because Fischer was one of the crane operators while he was a rigger.[13] Plaintiff admitted that Fischer did not indicate that he was Plaintiff's superior.[14] Given these undisputed facts, Plaintiff's alleged injuries stem from moving heavy cable as requested and supervised solely by Fischer.

Plaintiff seeks to impute liability to Arctia based on its employment relationship with Fischer. Arctia argues that it cannot be held liable for the actions of Fischer

---

[11]Doc. 141-3 at p. 3.

[12]*Id.* at p. 5.

[13]*Id.* at p. 7.

[14]*Id.*

because—based on the testimony of its corporate representative whose position with Arctia gave him knowledge concerning the various companies and personnel stationed and participating in the operations aboard the vessel—Fischer was not one of its employees.[15] Rather, Fischer worked for its subcontractor, FANØ KRAN ("FANØ"), which was the subcontractor responsible for crane operations on the vessel, and over which Arctia did not exercise control.[16] Arctia argues that there is no contradictory evidence to show that it controlled or supervised the work of FANØ's crane operators, or Fischer specifically, and therefore it cannot be vicariously liable for their negligence. Indeed, "it is recognized doctrine under the general maritime law that a principal cannot be held liable for the independent negligence of an independent contractor."[17] Under Alaska law, "an owner or employer does not normally incur liability for physical harm stemming from the negligence of an independent contractor."[18] In some instances, however, liability can be imposed on the employer of an independent contractor: if the entity who entrusts work to an independent contractor retains control over any part of the work it can be liable for harm to others caused by a failure to exercise such control with reasonable care.[19] That is to say, a contractor is not liable for harm caused by the

---

[15] Doc. 141-5 at pp. 3-4.

[16] *Id.;* Doc. 141-4 at p. 13.

[17] *Waggoner v. Wilson Welding*, No. Civ. A. 97-1899, 1998 WL 404653, at *3 (E.D. La. July 16, 1998) (citing *Ellixon v. Conoco, Inc.*, 950 F.2d 1196, 1207 (5th Cir. 1992)).

[18] *Chaffin v. United States*, 176 F.3d 1208, 1212 (9th Cir. 1999) (citing *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933 (Alaska 1968)).

[19] *Moloso v. State*, 644 P.2d 205, 210-11 (Alaska 1982) (adopting Restatement (Second) of Torts § 414).

negligence of its subcontractor unless that contractor retained or exercised control over the subcontractor's work.

Plaintiff argues that there is a disputed issue of fact surrounding both Fischer's employment and the amount of control retained and exercised by Arctia over Fischer's work. He points to his own deposition where he testified that he believed Fischer was an Arctia employee. He also relies on deposition testimony of Joshua Wyatt, an employee of Safety Management Systems who was working aboard the vessel at the time of the incident as a safety professional. Wyatt testified that Arctia employed the captain who had "ultimate work authority" over the vessel.[20] He testified that Arctia ran the day-to-day operations on the ship and that its employees consisted of the deck crew, maintenance crew, and crane crew.[21] He also testified that these crew members wore Arctia uniforms and spoke Finnish.[22] He cites a provision in Arctia's contract with Shell, which he believes requires Arctia to retain control and supervision over all subcontractors.[23]

Plaintiff's and Wyatt's testimony does not suffice to create an issue of fact for the jury as to which corporate entity was Fischer's employer. While Wyatt testified that Arctia was in control of the crane crew, he also testified that there were crane operators on the vessel working for other companies.[24] His testimony about crew members

---

[20]Doc. 152-5 at p. 4 (Wyatt depo. at p. 15).

[21]*Id.* at p. 5 (Wyatt depo. at p. 18).

[22]*Id.*

[23]Doc. 152-2 at pp. 27, 37 (Shell contract at ¶ 34, Annex B).

[24]Doc. 152-5 at p. 30 (Wyatt depo. at p. 120).

-6-

wearing Arctia uniforms was followed up by an admission that wearing an Arctia uniform did not mean that they were employed by Arctia.[25] Therefore, his testimony does not contradict Arctia's corporate representative's testimony that Fischer was not on Arctia's payroll or Arctia's evidence that lists all crew members and their employers and which identifies Fischer as a FANØ employee.

Moreover, Wyatt's testimony in full shows that he does not have personal knowledge regarding employment matters on the vessel. He testified that he did not know names of people who worked for Arctia because their names were Finnish and hard to remember.[26] He did not have knowledge about the various subcontracts at play on the vessel.[27] His knowledge was simply that "[the contractors] all work for Shell, but there are a lot of different depths to the contracts."[28] He admitted that it was not part of his job duties to know which company was supervising which crew member.[29] He only knew that the captain, an Arctia employee, had "ultimate work authority," but did not know whether the captain had to sign off on every single task that occurred on the ship or otherwise explain what ultimate work authority meant.[30] He did not know who employed the personnel working in the various sectors.[31] He testified that he no longer

---

[25]Doc. 153-1 at p. 4 (Wyatt depo. at p. 124).

[26]Doc. 152-5 at p. 4 (Wyatt depo. at pp. 13-14).

[27]*Id.* at p. 30 (Wyatt depo. at p. 120).

[28]*Id.* at p. 30 (Wyatt depo. at p. 120).

[29]*Id.* at p. 30 (Wyatt depo. at p. 118).

[30]Doc. 152-5 at p. 30 (Wyatt depo. at pp. 118-119).

[31]*Id.* at p. 30 (Wyatt depo. at pp. 119-120).

remembered which contractor was tasked with which responsibility.[32] Given his lack of personal knowledge on the subject of employment aboard the vessel, Wyatt's testimony does not constitute sufficient admissible evidence to create an issue of fact as to Fischer's employment status.

Plaintiff's testimony similarly does not constitute sufficient evidence from which a reasonable jury could find in his favor on the matter of employment. His testimony that he thought that Fischer was an Arctia employee is based on inadmissible hearsay–an alleged conversation he had with Fischer where Fischer said he worked for Arctia.[33]

Plaintiff has also failed to present sufficient evidence from which a reasonable jury could find in his favor on the matter of Arctia's control over Fischer's work. Again, Wyatt's testimony only generally states that the captain, an Arctia employee, had "ultimate authority" without providing any specific examples of the captain or any other Arctia employee directing or inspecting the clean up work of the cable crew or making any determinations as to whether they were performing their duties safely or correctly. He also admitted that various subcontrators were responsible for different job duties on the vessel, and he could not say whether the captain had to sign off on all tasks on board. The testimony Wyatt gave about crew members wearing Arctia uniforms does not provide evidence from which a jury could decide in Plaintiff's favor on the issue of Arctia's retained control because his testimony is far too general–it does not address whether Fischer wore such a uniform or whether the crew members were required by

---

[32]*Id.* at p. 31 (Wyatt depo. at pp. 122-123).

[33]Doc. 153-2 at p. 6 (Barry depo. at p. 405).

Arctia to wear such a uniform regardless of who was their actual employer. Plaintiff also cites testimony of Arctia's corporate representative who stated that cleaning the vessel's deck would be something an Arctia employee would do as part of his job duties, but he also stated that crew members working for other employees were resposible for their own safety and equipment when completing their duties.[34] Indeed, his testimony stated that a non-Arctia employee might be approached to clean up non-Arctia equipment.[35] That is to say, the testimony does not provide evidence that Arctia retained control or directed how all crew members cleaned up their equipment on deck, nor does it show that Arctia had any involvement or supervision over Fischer's decision to move and secure the crane cable.

Plaintiff relies on a contract provision between Arctia and Shell that he believes places responsibility on Arctia to oversee and supervise safety procedures of its subcontractors and their employees. The provision reads as follows:

> OWNER [Arctia] shall comply and shall ensure that all of its SUBCONTRACTORS and any persons employed by or under contract to OWNER or its SUBCONTRACTORS comply with the regulations regarding health (including drugs, alcohol and substance abuse), safety, security and environmental (including pollution), as specified by CHARTERER [Shell] and which may be amended or updated during the period of the CHARTER PARTY. Specific obligations are detailed in Annex B hereto.[36]

---

[34] Doc. 152-1 at p. 63 (Ekegren depo. at p. 63).

[35] Doc. 152-1 at p. 62 (Ekegren depo. at p. 62)

[36] Doc.152-2 at p. 27 (Shell contract at ¶ 34).

Annex B reads as follows:

SUBCONTRACTS
(a) The OWNER shall ensure that its SUBCONTRACTORS have a HSE management system, which fulfills the requirements set out in Annex B.

(b) The OWNER shall – even if not mentioned specifically in the previous clauses – include suitable equivalent clauses in subcontracts to meet the requirements of the Management of Health, Safety, and Environmental and Security sections of the agreement.[37]

These provisions do not impose a duty on Arctia to oversee, supervise, or manage the operations of Arctia's subcontractors. Rather, they require Arctia's to make sure its subcontractors have an HSE management system in place. Plaintiff does not allege that any subcontractors failed to have such a management system in place or that any such failure was linked to the injury alleged in his complaint. Moreover, as noted by Arctia, "the obligation to ensure that a subcontractor follows specified safety protocols alone is not evidence of the requisite specific control necessary to invalidate the protections afforded by the independent contractor doctrine."[38] Only when such a contract provision sets forth a specific requirement to supervise, oversee, or control a subcontractor's work is liability imposed for failure to properly exercise that retained control.[39] Plaintiff's reliance on *Hammond v. Bechtel Inc.*[40] is misplaced. In *Hammond*, the plaintiff presented evidence that the defendant, a construction management company, maintained a safety inspection practice over work performed by the plaintiff,

---

[37]Id. at p. 37 (Shell contract at ANNEX B).

[38]Doc. 153 at p. 4. *See Williams v. Fenix & Scisson, Inc.*, 608 F.2d 1205, 1209 (9th Cir. 1979).

[39]*See Morris v. City of Soldotna*, 553 P.2d 474, 479-80 (Alaska 1976).

[40]606 P.2d 1269 (Alaska 1980).

-10-

who worked for an independent contractor. There was testimony that the defendant would inspect the plaintiff's equipment or suspend his use of equipment if it deemed the equipment unsafe. Such evidence, coupled with specific contract provisions dealing with the defendant's safety responsibilities, was sufficient to create a genuine issue of fact for trial. There is no evidence of Arctia actually exercising such control or supervision here.

When considered in light of Arctia's corporate representative's testimony and declaration, Plaintiff simply has not presented enough evidence from which a reasonable jury could find that Arctia actively controlled Fischer's work in general or his decision to have the unsecured crane cable moved or the manner in which he performed such a task with Plaintiff.

## **V. CONCLUSION**

Based on the preceding discussion, Defendant Arctia's motion for summary judgment at docket 141 is GRANTED.

DATED this 21st day of June 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT