# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| BLANE BARRY, ) | |
| ) | |
| Plaintiff, ) | 2:15-cv-00004 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| ) | [Re: Motion at docket 173] |
| SHELL OIL COMPANY, ARCTIA ) | |
| OFFSHORE, LTD., SHELL ) | |
| OFFSHORE, INC.; and SAFETY ) | |
| MANAGEMENT SYSTEMS, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. MOTION PRESENTED

At docket 173 defendant Safety Management Systems, LLC ("SMS") moves for summary judgment as to the claims brought against it by Plaintiff Blane Barry ("Plaintiff"). The motion is supported by a memorandum at docket 174. Arctia Offshore,

-1-

Ltd. ("Arctia") responds at docket 177. Plaintiff responds at docket 180. SMS replies at docket 182. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This matter arises out of a claim for personal injuries sustained by Plaintiff in August of 2012 while he was working aboard the M/V NORDICA for EPS Cargo Handlers or EPS Logistics (collectively "EPS") as a lead rigger. The NORDICA was owned by defendant Arctia. Arctia supplied the vessel via a Master Time Charter with defendant Shell Offshore, Inc. ("Shell") to aid Shell with marine oil field support and transportation services. Plaintiff alleges in his complaint that he seriously injured his back and neck while lifting a heavy cable at the request of another crew member on board the vessel. He seeks damages for lost earnings, lost earning capacity, past and future medical expenses, and "physical and emotional pain and suffering and loss of enjoyment of life."[1]

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a

---

[1] Doc. 4 at ¶¶ 23, 24, 25.

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

reasonable jury could return a verdict for the nonmoving party."[4]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[9]  However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

---

[4]*Id.*

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

## IV.  DISCUSSION

Plaintiff alleges that his spinal injuries on board the NORDICA occurred as a result of helping another crew member, Jens Boel Fischer, lift a crane cable spool on deck.  Fischer was one of the crane technicians aboard the vessel.  During his deposition, Plaintiff testified that he was approached by Fischer to help secure and clean up items on NORDICA's deck in advance of impending adverse weather.  There were miscellaneous items to pick up or secure and a large spool of crane cable that needed to be moved.  He admitted at his deposition that only Fischer asked him to help and that he did not know whether anyone had asked Fischer to complete such a task.[11] He admitted that no officers, captains or members of the navigational team were involved in the deck clean up or directed him to engage in such efforts.[12]  Plaintiff agreed to help Fischer clean up, believing that Fischer was an employee of Arctia and that he had to comply with Fischer's directions because Fischer was one of the crane operators while he was a rigger.[13]  Plaintiff admitted that Fischer did not indicate that he was Plaintiff's superior.[14]  Given these undisputed facts, Plaintiff's alleged injuries stem from moving heavy cable as requested and supervised solely by Fischer.

In an order at docket 155, the court granted summary judgment to Arctia.  However, the court denied SMS' first motion for summary judgment at docket 144.  The court explained its decision to deny SMS ' motion as follows:

---

[11]Doc. 141-3 at pp. 3.

[12]*Id.* at p. 5.

[13]*Id.* at p. 7.

[14]*Id.*

Two central factual questions remain in dispute necessitating the presence of SMS as a Co-Defendant in this case. Joshua Wyatt was the safety representative assigned to the vessel by SMS. His duty and responsibility regarding safety on the NORDICA and the duty and responsibilities of SMS in relationship to Shell are issues that remain in dispute.[15]

The lengthy contract between Shell and SMS is comprised mainly of standard form provisions used by Shell for an array of different contractors.[16] Most pertinent to the matter at hand the contract (1) expresses Shell's "'Goal Zero' [which ] means the principle of relentlessly pursuing no harm to people and no significant incidents"[17]; (2) obligates SMS to be aware of Goal Zero;[18] and (3) requires SMS to provide the services of an HSE technician upon Shell's request.[19] The goal of no harm to people and SMS' obligation to provide the HSE representative is sufficient to establish that SMS had a duty to persons on the NORDICA to seek to assure their safety.

SMS' employee Joshua Wyatt was the HSE safety technician on the NORDICA. In that role Wyatt's duty was to assure that operations on the vessel were conducted safely. At his deposition, Wyatt testified he was on the vessel to insure that Shell's policies and procedures were followed to make sure things were done in a safe manner.[20] Before any activity was undertaken, even basic cleaning such as mopping or sweeping, there was to be a pre-job safety discussion of the activity and a joint safety

---

[15] Docket 144 at p. 4.

[16] Docket 180-7.

[17] *Id.* at p. 4.

[18] *Id*, at p. 7.

[19] *Id.* at p. 21.

[20] Deposition of Joshua Wyatt, docket 180-5 at p. 22.

-5-

assessment ("JSA") prepared.[21] Wyatt was to be involved in the JSA process and would have some oversight to see that the work was done safely.[22] Wyatt was expected to attend daily meetings on the vessel and to participate in round-table discussions to learn what was going on aboard the ship.[23]

The NORDICA is an ice breaker and around the time of the accident there was no ice management to be done. So basically, the vessel was waiting for the time when ice-breaking would be needed.[24] Wyatt testified that there was nothing going on aboard the NORDICA on the day of Barry's injury.[25] Wyatt said that because there was no work being done, there was no JSA.[26] Hence, in Wyatt's view he had nothing to review or oversee.

While it is clear that the NORDICA had no ice management duties to perform in August of 2012, it cannot accurately be said that there was nothing going on aboard the vessel. For one thing, sound source devices were being deployed on the seabed in August.[27] Beyond that, there were routine maintenance chores being done daily.[28] Also, there is the activity in which Barry was injured when helping Fisher move the

---

[21]*Id.* at pp. 129-30.

[22]*Id*. at p. 129.

[23]*Id*. at pp. 24-25.

[24] Deposition of Tom Ekegren, docket 180-2 at pp. 13-14.

[25] Docket 180-5 at pp. 129, 131.

[26]*Id*. at p. 131.

[27]Doc. 180-2 at p. 15.

[28]*Id*. at p. 61; Deposition of Barry, docket 180-4 at p. 44.

-6-

crane cable spool.[29] Drawing all justifiable inferences from these facts in favor of non-movant Barry supports the conclusion that Wyatt was negligent in the discharge of his safety responsibilities. SMS is not entitled to summary judgment with respect to Barry's claim regarding the circumstances in which he was injured.

Barry's injuries may have been exacerbated when he was transferred 3 miles to shore in a fast rescue boat. SMS contends that it is not responsible for any increased damage caused by the boat transport. SMS points out that Wyatt specifically recommended against that form of transport and indicated helicopter transfer was preferable. SMS says Wyatt's recommendation was rejected by Shell which made the decision to make the transfer by boat.[30] Barry counters by pointing to Wyatt's testimony that "everybody from the bottom up and the top down has the authority to stop the job and it's their obligation to do so."[31]

Wyatt's statement emphasizes the overriding importance of safety to Shell and its subcontractors. However, it is not credible to say that if Shell itself made a decision after hearing contrary advice that the giver of that contrary advice could stop the work. With respect to any additional injury caused by the transport to shore on a fast rescue boat, there is no credible evidence that anyone but Shell made that decision. SMS is entitled to summary judgment on this point.

---

[29]Docket 141-3 at pp. 1-8.

[30]Docket 180-5 at pp. 66-76.

[31]*Id*. at p. 33.

In its response Arctia asserts that after the court awarded summary judgment on Barry's claims against Arctic, Arctia's cross claims against SMS became moot, and so the court ought not to consider the motion at docket 173.[32] The court has determined that it should consider the motion at docket 173, for it narrows the issues for trial between Barry and SMS. In this circumstance, Arctia asks the court to consider the arguments in its opposition to SMS' first summary judgment motion.[33] Those arguments are found at docket 129. They are very much like Barry's arguments in his response to the pending motion. Nothing in docket 129 causes the court to alter the analysis set out above.

## V. CONCLUSION

For the reasons above the motion at docket 173 is DENIED as to the claim that SMS is responsible for Barry's initial injury, but GRANTED as to the claim that SMS is responsible for any additional injury caused by the transport to shore by boat.

DATED this 25th day of September 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[32]Doc. 177 at p. 4.

[33]*Id*.